### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**MARIA KARPAITIS**                                                        **PLAINTIFF**

**v.**                                       **CIVIL ACTION NO.**   1:21cv305 LG-JCG

**MANDAL'S, INC.**                                                  **DEFENDANT**

### COMPLAINT
### JURY TRIAL DEMANDED

**COMES NOW** the Plaintiff, Maria Karpaitis, by and through counsel, Watson & Norris, PLLC, and files this action to recover damages for violations of her rights under the Fair Labor Standards Act (FLSA) for failure to pay overtime pay, under Title VII and 42 U.S.C. § 1981 for race discrimination, under Title VII for sex discrimination and retaliation and under the ADEA for age discrimination. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

### THE PARTIES

1. Plaintiff, Maria Karpaitis, is an adult female who resides in Hancock County, Mississippi.

2. Defendant, Mandal's, Inc., is a Mississippi Corporation that may be served through its registered agent: Christopher L. Cooper, 4002 Hewes Avenue, Gulfport, Mississippi 39507.

### JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over all claims asserted against the Defendant and venue is proper in this Court.

## **STATEMENT OF FACTS**

4. Plaintiff is a 57-year-old Hispanic female resident of Hancock County, Mississippi.

5. Plaintiff was hired on June 16, 2014, as a Project Administrative Manager for the Defendant, Mandal's, Inc.

6. Plaintiff was more than qualified for the position of Project Administrative Manager because the position requires a significant amount of customer service which Plaintiff has been performing since 2003.

7. In February 2020, Mandal's, Inc. brought on a new president, Mr. Billy Owens.

8. In early May 2020, Mr. Owens approached Plaintiff. He looked her 'up and down' and likely picking up on her discomfort, Mr. Owens stated, "I hope I didn't make you feel uncomfortable, I just wanted you to know that you look nice today."

9. Plaintiff felt uncomfortable about the way Mr. Owens looked at her, and she did not respond.

10. Plaintiff remained silent and walked away.

11. This incident was witnessed by Mr. Marvin Ferguson, a company Project Manager, who later told Mrs. Karpaitis that he too noticed how uncomfortable it made her feel and that the comments by Mr. Owens were inappropriate.

12. On June 3, 2020, Plaintiff and Receptionist Teresa Frame began discussing their mutual desire to begin a new regimen of exercising.

13. Mr. Owens walked up to them and smirked, and said, "Maybe I shouldn't comment, but it's funny what women consider exercise."

14. Plaintiff responded, "Maybe you're right.  Maybe you shouldn't comment."

15. Then Mr. Owens continued, "Using a pole is more of a form of entertainment; it's not exercise."

16. Plaintiff immediately left the office and called Office Manager Tracy Rosine to report the sexually offensive incident.

17. On the following day, regarding the incident, Plaintiff turned in a written complaint of sexual harassment regarding Mr. Owens' inappropriate sexual comments to Ms. Rosine.

18. Ms. Rosine asked further questions about the incident and indicated that an investigation would be initiated.

19. On Monday June 8, 2020, Mr. Cooper called all personnel to a meeting.  He stated that effective Tuesday June 9, 2020, all office personnel (except one or two) would work remotely

20. On Tuesday June 9, 2020, Plaintiff went to the hospital for a Covid-19 test because several co-workers that she worked with tested positive.

21. On Wednesday June 10, 2020, at 9:01 a.m., Mr. Cooper sent an email to all staff that everyone would return to the office effective Monday June 15, 2020.

22. On Wednesday June 10, 2020, at 3:43p.m., Mr. Owens sent a revised return to office schedule of Thursday June 11, 2020.

23. On Thursday June 11, 2020, all staff returned to the office.

24. On Friday June 12, 2020, Plaintiff took a personal day.

25. On the morning of June 14, 2020, Plaintiff received a call from the hospital that she tested positive for Covid-19 and that she should self-quarantine for 2 weeks.

26. At 10:43 a.m., that same morning Plaintiff spoke with Ms. Rosine and informed her of her positive Covid-19 test and that Plaintiff would return to work on June 24, 2020.

27. At 1:00 p.m., Plaintiff notified Mr. Cooper, Mr. Owens and Mrs. Rosine of her positive Covid-19 test and the need for her to self-quarantine until June 23, 2020.

28. Mr. Cooper asked that Plaintiff send a list of "close contacts" in the office as well as the test results from the hospital.

29. Plaintiff also notified them that the nurse stated to Plaintiff that the start of Plaintiff's 14-day quarantine starts at date of testing.

30. On Monday June 15, 2020, Plaintiff received a letter from MS Dept of Health regarding her positive Covid-19 test and the need to self-quarantine.

31. Plaintiff sent this notification by email to Ms. Rosine.

32. On June 24, 2020, Plaintiff returned to work.

33. Upon her return, Plaintiff verbally inquired with Tracy Rosine regarding the status of the investigation of the sexual harassment surrounding her previous complaint.

34. No response was forthcoming.

35. On July 7, 2020, Mr. Owens requested that Plaintiff and two other employees meet in a conference room.

36. Mr. Owens then inquired of Plaintiff as to why she left work early (i.e., 40 minutes early) on July 3, 2020, without notifying any management when she had already worked 40 hours that week.

37. Plaintiff was a non-exempt employee and consistently worked in excess of 40 hours each work week and was not properly compensated at time and a half for all hours worked in excess of 40 hours each work week as required by the FLSA.

38. Plaintiff explained that she left early that day because she had already worked 40 hours that week and she was still struggling with shortness of breath residually from the Covid-19 infection.

39. She further explained that she frequently works past regular work hours and that no one was present to notify of her departure on the day in question.

40. On July 21, 2020, Mr. Owens called Plaintiff to his office.

41. During this conversation, Mr. Owens referred obscurely to Plaintiff's complaint of sexual harassment against him.

42. Mr. Owens spoke defensively about his reference to pole dancing, and seemed to be rationalizing his comments, but he did not apologize to her about his words.

43. Mr. Owens then indicated that the company was facing reorganization and she would be the first one terminated, but in reality, Plaintiff was the only one terminated.

44. During this conversation, Mr. Owens clearly stated that it was his decision to terminate Plaintiff and she received a termination letter signed by Mr. Owens.

45. This fact flatly contradicts the allegation made in the Defendant's Position Statement to the EEOC, dated February 16, 2021, that the decision to terminate Plaintiff was made by CEO Chris Cooper.

46. Mr. Owens made a vague reference to "many contractors and outside customers and some concerns about how they are being treated", but no mention was ever made to Plaintiff by Mr. Owens or anyone else regarding any complaints from an EMR Superintendent, as Defendant's Position Statement to the EEOC further alleges.

47. Plaintiff adamantly denies the veracity of any allegation that she was ever rude to any contractors or customers.

48. It is noteworthy that there is another Project Administrative Manager, Britney Morrison (white female in her early 30s).

49. Within recent months prior to Plaintiff's termination, multiple complaints had been made about Ms. Morrison by customers and other employees.

50. Despite these numerous complaints, Ms. Morrison was retained as an employee while Plaintiff was terminated after alleged complaints from general contractors, none of which had ever been mentioned to her prior to the day of her termination.

51. After Plaintiff was terminated, Plaintiff's position was reportedly replaced by a substantially younger white female, Ms. Morrison, who is in her early 30's.

## CAUSE OF ACTION

## COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT

52. Plaintiff alleges and incorporates all averments set forth in paragraphs 1 through 51 above as if fully incorporated herein.

53. One July 7, 2020, Mr. Owens inquired of Plaintiff as to why she left work early (i.e., 40 minutes early) on July 3, 2020, without notifying any management.

54. Plaintiff explained that she left early that day because she had already worked 40 hours that week and she was still struggling with shortness of breath residually from the Covid-19 infection.

55. Plaintiff further explained to Mr. Owens that she frequently works past regular work hours and worked over 40 hours each week for which she was not properly compensated.

56. Plaintiff was a non-exempt employee and consistently worked in excess of 40 hours each work week and was not properly compensated at time and a half for all hours worked in excess of 40 hours each work week as required by the FLSA.

57. However, the Defendant's purported reason given to Plaintiff for her termination was alleged complaints from general contractors, none of which had ever been mentioned to Plaintiff prior to the day of her termination.

58. The acts of the Defendant constitute a willful intentional violation of the Fair Labor Standards Act.

### COUNT II: VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 and 42 U.S.C. § 1981 – RACE DISCRIMINATION

59. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 51 above as though specifically set forth herein.

60. Plaintiff has been discriminated against by the Defendant in the terms and conditions of her employment on the basis of her race, Hispanic.

61. Plaintiff was terminated and replaced by a substantially younger white female, Ms. Morrison.

62. Plaintiff has suffered an adverse employment action as a result of the Defendant's discriminatory treatment of Plaintiff.

63. Plaintiff has been harmed as a result of the Defendant's discrimination, and the Defendant is liable to the Plaintiff for the same.

64. The acts of the Defendant constitute a willful intentional violation of Title VII and 42 U.S.C. § 1981 and entitle Plaintiff to recovery of damages, both compensatory and punitive in nature.

### COUNT III: VIOLATION OF TITLE VII – SEX DISCRIMINATION

65. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 51 above as though specifically set forth herein.

66. Plaintiff has been discriminated against in the terms and conditions of her employment on the basis of her gender, female.

67. After numerous unwanted sexual comments from Mr. Owens, his comment, "Using a pole is more of a form of entertainment; it's not exercise", was enough to force Plaintiff to report the offensive incident to Officer Manager Tracy Rosine.

68. The following day after the incident, Plaintiff turned in a written complaint of sexual harassment regarding Mr. Owens' inappropriate sexual comments to Ms. Rosine.

69. On July 21, 2020, Mr. Owens called Plaintiff to his office and referred obscurely to Plaintiff's complaint of sexual harassment against him.

70. Mr. Owens spoke defensively about his reference to pole dancing, and seemed to be rationalizing his comments, but he did not apologize to her about his words.

71. Instead, Mr. Owens terminated Plaintiff.

72. Plaintiff has suffered an adverse employment action as a result of the Defendant's discriminatory treatment of Plaintiff.

73. Plaintiff has been harmed as a result of the Defendant's discrimination, and the Defendant is liable to Plaintiff for the same.

74. The acts of the Defendant constitute a willful and intentional violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, and entitle Plaintiff to recovery of damages, both compensatory and punitive in nature.

### COUNT IV: VIOLATION OF TITLE VII – RETALIATION

75. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 51 above as though specifically set forth herein.

76. Defendant violated Title VII of the Civil Rights Act of 1964 by retaliating against Plaintiff for making a complaint regarding the unwelcomed sexual advances and sexual harassment from Mr. Owens.

77. The acts of the Defendant constitute a willful intentional violation of Title VII of the Civil Rights Act of 1964, and entitle Plaintiff to recovery of damages, both pecuniary and punitive in nature.

78. As a result of Defendant's said retaliation, Plaintiff suffered damages, including but not limited to compensatory damages, loss of reputation, humiliation, embarrassment, emotional pain and suffering, inconvenience, and mental anguish.  In addition, Plaintiff is entitled to an award of punitive damages against Defendant.

## COUNT V: AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA)

79. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 51 above as though specifically set forth herein.

80. Plaintiff has been discriminated against by the Defendant in the terms and conditions of her employment on the basis of her age, 57.

81. Plaintiff was terminated and replaced by a substantially younger white female, Ms. Morrison, who is in her early 30's.

82. Defendant's actions constitute intentional discrimination on the basis of age in violation of the ADEA. Specifically, Plaintiff is over the age of 40 and was more than qualified for her position with the Defendant.

83. The unlawful actions of the Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. Back wages and reinstatement; or
2. Future wages in lieu of reinstatement;
3. A tax gross-up and all make whole relief:
4. Compensatory damages;
5. Liquidated damages;
6. Punitive damages;
7. Attorney's fees;
8. Lost benefits;
9. Pre-judgment and post-judgment interest;
10. Costs and expenses; and
11. Such further relief as is deemed just and proper.

THIS the 24th day of September 2021.

                                              Respectfully submitted,

                                              MARIA KARPAITIS, Plaintiff

                            By:    /s/Louis H. Watson, Jr.
                                     Louis H. Watson, Jr.  (MB# 9053)
                                     Nick Norris (MB# 101574)
                                     Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
4209 Lakeland Drive # 365
Flowood, MS 39232-9212
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
Email: louis@watsonnorris.com
Web:  www.watsonnorris.com