# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**MARIA KARPAITIS**                                                                **PLAINTIFF**

**v.**                                                   **CAUSE NO. 1:21-cv-305-LG-RHWR**

**MANDAL'S, INC.**
                                                                                 **DEFENDANT**

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL DISMISSAL

**BEFORE THE COURT** is the [7] Motion for Partial Dismissal of Plaintiff's Claims filed by Defendant, Mandal's, Inc. Plaintiff filed a [11] Response, to which Defendant [13] replied. After due consideration of the parties' submissions, the record in this matter, and the applicable law, the Court finds that the Motion should be granted in part and denied in part.

### BACKGROUND

Plaintiff, Maria Karpaitis, sues her former employer, Mandal's, Inc., for alleged violations of the Fair Labor Standards Act, Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, and 42 U.S.C. § 1981. The present [7] Motion for Partial Dismissal concerns Plaintiff's sexual harassment and retaliation claims under Title VII.

The Complaint narrates a May 2020 incident in which Defendant's new president, Mr. Billy Owens, approached Plaintiff, "looked her 'up and down,'" and said, "'I hope I didn't make you feel uncomfortable, I just wanted you to know that you look nice today.'" (Compl., ¶ 8, ECF No. 1). The interaction was witnessed by

another employee, who noticed Plaintiff's visible discomfort. (*Id.* ¶ 11). The Complaint also recounts another incident which occurred in June 2020. (*Id.* ¶¶ 12-15). At that time, Owens reportedly approached Plaintiff and a receptionist, who were conversing about exercise regimens, and said, "'Maybe I shouldn't comment, but it's funny what women consider exercise.'" (*Id.* ¶ 13). According to Plaintiff, when she agreed that a comment was unnecessary, he continued, "'Using a pole is more of a form of entertainment; it's not exercise.'" (*Id.* ¶ 15).

Plaintiff reported this latter incident via oral and written complaint to an Office Manager, who "indicated that an investigation would be initiated." (*Id.* ¶¶ 16-18). Plaintiff tested positive for COVID-19 on June 14, 2020, and quarantined until June 23, 2020, where after she returned to work. (*Id.* ¶¶ 25-32). After she returned, on July 7, Owens summoned Plaintiff and two other employees to a conference, where he questioned her about leaving work forty minutes early on July 3 without notifying management. (*Id.* ¶¶ 35-36). Plaintiff responded that "she left early that day because she had already worked 40 hours that week and she was still struggling with shortness of breath residually from the Covid-19 infection." (*Id.* ¶ 38). "She further explained that she frequently works past regular work hours and that no one was present to notify of her departure on the day in question." (*Id.* ¶ 39).

Owens called Plaintiff to another conference on July 21, where he "referred obscurely to Plaintiff's complaint of sexual harassment" and "spoke defensively about his reference to pole dancing," seemingly "rationalizing his comments" and

withholding an apology. (*Id.* ¶¶ 40-42). Owens "then indicated that the company was facing reorganization and she would be the first one terminated, but in reality, Plaintiff was the only one terminated." (*Id.* ¶ 43). Plaintiff attributes this decision to Owens, who reportedly "stated that it was his decision to terminate [her]" and signed her termination letter. (*Id.* ¶ 44). During this conversation, Owens cited complaints made by "'many contractors and outside customers'" about her conduct, reports which she "adamantly denies." (*Id.* ¶¶ 46-47). Finally, Plaintiff observes that she was replaced by "a substantially younger white female," who, according to Plaintiff, was the subject of numerous employee and customer complaints. (*Id.* ¶¶ 48-51).

Plaintiff filed the instant action in this Court on September 24, 2021. On December 1, 2021, Defendant filed the present [7] Motion for Partial Dismissal, seeking dismissal of Plaintiff's sexual discrimination and retaliation claims. (Mem. Supp. Mot. Part. Dismissal Pl.'s Claims, 1, ECF No. 8). Plaintiff filed a [11] Response on December 22, 2021, to which Defendant [12] replied. After the briefing was completed, the Court held a hearing on the Motion on June 21, 2022. The issues are now fully briefed and ripe for disposition by the Court.

## DISCUSSION

### I. Rule 12(b)(6) Motion to Dismiss Standard

Under Rule 12(b)(6), the Court "must accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010). Further,

3

"all questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). On the other hand, courts are not bound to accept as true a legal conclusion couched as a factual allegation. *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court may review the facts set forth in the Complaint, documents attached to the Complaint, and matters of which the court may take judicial notice under Federal Rule of Evidence 201. *Id.*

## II. Application to Defendant's Motion to Dismiss

At issue in this Motion are Plaintiff's claims of sexual discrimination and retaliation under Title VII of the Civil Rights Act. The relevant statute provides: "It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a).

### A. Sexual Harassment

There are two kinds of sexual harassment claims under Title VII: *quid pro quo* claims, in which "a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands," and hostile work environment claims, which involve "severe or pervasive" sexual harassment without a tangible employment decision relating thereto. *Burlington Indus., Inc. v. Ellerth*,

524 U.S. 742, 753-54 (1998). Although Defendant's Motion briefs the Court on hostile work environment case law, Plaintiff's Response clarifies that she asserts a claim of *quid pro quo* sexual harassment. (Pl.'s Resp. Def.'s Mot. Dismiss, ¶ 7, ECF No. 11). The Court finds that the facts alleged in the Complaint fail to state a claim under either theory of sexual harassment.

### 1. Hostile Work Environment Theory

"There are five elements necessary to set forth a hostile environment claim: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a 'term, condition, or privilege' of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action." *Shepherd v. Comptroller of Pub. Accts. of State of Tex.*, 168 F.3d 871, 873 (5th Cir. 1999) (quoting *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986)). However, Fifth Circuit "precedent is clear that [Plaintiff] 'need not make out a prima facie case of discrimination in order to survive a rule 12(b)(6) motion to dismiss for failure to state a claim.'" *Whitlock v. Lazer Spot, Inc.*, 657 F. App'x 285, 286 (5th Cir. 2016) (citation omitted).

While Plaintiff need not set forth a prima facie case, this "does not exempt a plaintiff from *alleging facts* sufficient to establish the elements of her claims." *Meadows v. City of Crowley*, 731 F. App'x 317, 318 (5th Cir. 2018) (emphasis in original) (citing *Chhim v. Univ. Tex. Austin*, 836 F.3d 467, 470 (5th Cir. 2016). "A hostile work environment claim . . . necessarily rests on an allegation that an

5

employer has created 'a working environment heavily charged with . . . discrimination.'" *Raj v. La. State Univ.*, 714 F.3d 322, 330-31 (5th Cir. 2013). "To affect a condition or privilege of employment, the harassment must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Stone v. La. Dept. of Revenue*, 590 F. App'x 332, 340 (5th Cir. 2014); *see also Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009) (holding that the workplace must be "'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment'").

"'Simple teasing,' . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations omitted); *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (repeating this rule). The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.' . . . Properly applied, they will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Faragher*, 524 U.S. at 788 (internal quotations and citations omitted). Thus, a single gender-related joke is "at worst an 'isolated incident' that cannot remotely be considered 'extremely serious.'" *Clark Cty. Sch. Dist.*, 532 U.S. at 271 (citation omitted).

6

Still, "[a]n egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment." *Lauderdale v. Tex. Dept. of Crim. Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007). "'[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct.'" *Id.* (quoting *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991)). For instance, conduct such as "'inappropriate touching at the workplace, which is significantly more severe than rude or sexual comments,'" may compensate for a lack of pervasiveness to support a hostile work environment claim. *Rico v. Family Emergency Rooms, LLC*, No. 1:21CV0587-LY, 2021 WL 8362168, at *4 (W.D. Tex. Oct. 13, 2021) (quoting *Bookman v. AIDS Arms, Inc.*, No. 3:14CV814-B, 2014 WL 4968189, at *4 (N.D. Tex. Oct. 3, 2014)).

Here, the Complaint relates that Billy Owens, Defendant's president, made suggestive comments towards Plaintiff on two occasions. On one occasion, he "looked her 'up and down,'" and said, "'I hope I didn't make you feel uncomfortable, I just wanted you to know that you look nice today.'" (Compl. ¶ 8, ECF No. 1). On the other, he approached a conversation involving Plaintiff about exercise regimens and said, "'Maybe I shouldn't comment, but it's funny what women consider exercise.'" (*Id.* ¶ 13). When Plaintiff agreed that a comment was unnecessary, he continued: "'Using a pole is more of a form of entertainment; it's not exercise.'" (*Id.* ¶ 15). These allegations, assumed to be true on a Rule 12(b)(6) Motion to Dismiss, are two isolated incidents of unwanted gender-related teasing and flirtation. *See*

7

*Faragher*, 524 U.S. at 788. Thus, the Court finds that the allegations do not rise to the level of "severe or pervasive" conduct required to maintain a hostile work environment claim. *Id.* Further, the allegations are not of particularly egregious conduct—such as "inappropriate touching at the workplace, which is significantly more severe than rude or sexual comments"—which could compensate for the lack of pervasiveness. *See Rico*, 2021 WL 8362168, at *4.

Therefore, the Court finds that Plaintiff's sexual harassment claim, to the extent it is based on a hostile work environment theory, remains unsupported by sufficient factual allegations and must be dismissed. *See, e.g., Johnson v. Bd. of Supervisors of La. State Univ.*, Civ. No. 19-12823, 2020 WL 1903997, at *2-3 (E.D. La. Apr. 17, 2020) (dismissing a Title VII hostile work environment claim at the motion to dismiss stage because the plaintiff alleged "only one isolated incident of sexual harassment" which was neither severe nor pervasive); *Lucio v. Fern at Tenth LLC*, Civ. No. 7:19CV189, 2019 WL 4993418, at *9-10 (S.D. Tex. Oct. 8, 2019) (dismissing a Title VII hostile work environment claim at the motion to dismiss stage because the "statements did not occur on a regular basis for a long duration, were not physically threatening or humiliating, and were not hostile or abusive as to make them objectively offensive to a reasonable person").

### 2. *Quid Pro Quo* Theory

On the other hand, a *quid pro quo* sexual harassment claim requires that the plaintiff suffer a tangible employment action for her refusal to submit to a supervisor's sexual demands. *Ellerth*, 524 U.S. at 753-54 (characterizing *quid pro*

*quo* claims as those in which "a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands"); *Henson v. City of Dundee*, 682 F.2d 897, 910 (11th Cir. 1982) ("In such a case [of quid pro quo sexual harassment], the supervisor relies upon his apparent or actual authority to extort sexual consideration from an employee."). Here, Plaintiff has alleged that she was terminated by Owens for rejecting his sexual harassment. (Compl. ¶¶ 65-74, ECF No. 1). Plaintiff's termination is clearly a "tangible employment action" which supports a *quid pro quo* claim under Title VII. *See Ellerth*, 524 U.S. at 761 ("A tangible employment action constitutes a significant change in employment status, such as . . . firing.").

At the other end of the exchange, Plaintiff must allege that she was terminated for refusing to submit to a sexual demand or favor. For instance, in a case where the plaintiff alleged nine incidents of sexual harassment, which largely consisted of gender-based comments, questions, and compliments, a federal district court in Texas found that this conduct could "be described as flirtatious, and perhaps are indicative of [the supervisor]'s amorous interest in [the plaintiff]." *Pfeil v. Intecom Telecomms.*, 90 F.Supp.2d 742, 745-46 (N.D. Tex. 2000). "Some of the remarks certainly could be considered insensitive, boorish, uncouth, or even offensive." *Id*. at 747-48. But because the supervisor "never propositioned [the plaintiff] for sex," nor "had sex with her," nor "threatened her or in any way implied that her continued employment was conditioned on granting him sexual favors," nor "touched her or fondled her," nor "commented on her sex life," nor "promoted a

9

sexually charged environment," nor "implied or stated that she was incompetent because of her sex," the conduct and comments "as a matter of law do not constitute sexual harassment." *Id*. at 748.[1] The Fifth Circuit has held that where the alleged harasser "did not discuss sexual matters, cause any physical contact, or make any threats or promises related to her rejection or acceptance of his affections," such conduct could not support a *quid pro quo* claim as a matter of law. *Ellert v. Univ. Tex. at Dallas*, 52 F.3d 543, 545 (5th Cir. 1995).

Here, Plaintiff does not allege that Owens made any sexual advances or threats towards her. Rather, in her response brief, she states her *quid pro quo* claim in the following way:

> A reasonable jury could conclude based on those facts that the employer terminated Plaintiff because Plaintiff would not agree to her supervisor's demands that he be allowed to continue making sexist jokes in the workplace that demeaned women.

(Pl.'s Resp. Def.'s Mot. Dismiss ¶ 11, ECF No. 11). Like *Pfeil*, the Court finds that Owens' comments were flirtatious, offensive, and altogether inappropriate, but not by themselves actionable as *quid pro quo* sexual harassment under Title VII. *See Pfeil*, 90 F.Supp.2d at 745-48. In other words, on this Rule 12(b)(6) motion to dismiss, the Court finds that Plaintiff has failed to support her *quid pro quo* claim with allegations that Owens propositioned her for sex or made any other sexual

---

[1] *See also Sparks v. Reg'l Med. Ctr. Bd.*, 792 F. Supp. 735, 745 (N.D. Ala. 1992) (holding that, where "alleged misconduct consisted only of sexual comments and jokes directed at plaintiff, offensive language, and instances of rough conduct, . . . [t]his type of conduct is more representative of hostile work environment sexual harassment") (citing *Steele v. Offshore Shipbuilding*, 867 F.2d 1311, 1316 (11th Cir. 1989)).

demand, advance, touch, or threat of any kind. Nor are there specific factual allegations that her employment was conditioned on her responsiveness to any such demands. Hence, the Complaint currently fails as a matter of law to state a *quid pro quo* theory of sexual harassment. *See Matthews v. High Island Indep. Sch. Dist.*, 991 F.Supp. 840, 845 (S.D. Tex. 1998) (dismissing *quid pro quo* claims on a motion to dismiss where "[a]bsolutely no factual pleadings appear in the Second Amended Complaint to substantiate allegations that [the supervisor] or anyone else required sexual favors in exchange for job benefits").

    B.    **Retaliation**

Plaintiff also alleges that she was terminated for engaging in the protected activity of reporting the sexual harassment. Defendant argues that Plaintiff did not have a reasonable belief that she was engaging in a protected activity. Defendant reasons that, because Owens' alleged statement did not constitute a sexual demand, no reasonable person could interpret the statement as constituting sexual harassment. In opposition, Plaintiff contends that she must only show a good faith belief that Owens' conduct was in violation of Title VII, and thus, her retaliation claim should not be dismissed.

A plaintiff alleging a Title VII retaliation claim must plead "(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996). "For the first element, an employee has engaged in protected activity if she

11

has (1) 'opposed any practice made an unlawful employment practice by this subchapter,' or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Wilson v. Republic Nat'l Indus. of Tex., LP*, No. 3:19-cv-593-B, 2019 WL 3859666, at *4 (N.D. Tex. Aug. 16, 2019) (quoting *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427-28 (5th Cir. 2000)); *see also* 42 U.S.C. § 2000e-3(a). A plaintiff need not prove that the employer's practices were actually unlawful but that she had "'a reasonable belief that the employer engaged in unlawful employment practices.'" *Wilson*, 2019 WL 3859666, at *3 (quoting *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. Sept. 4, 1981)). "[A] showing of subjective good faith alone is insufficient." *Wilson*, 2019 WL 3859666, at *4 (citation omitted).

Here, Plaintiff relies on the report she made "regarding the unwelcomed sexual advances and sexual harassment from Mr. Owens." (*See* Compl., ¶ 76, ECF No. 1). The report cites Owens making Plaintiff uncomfortable by looking her "up and down" and his unwelcome comments about pole dancing. (EEOC Charge, at 1-2, ECF No. 1-1). Plaintiff notes that, on both occasions, employees witnessed the incidents and noticed her discomfort. (*See* EEOC Charge, at 1-2, ECF No. 1-1). Plaintiff's subjective belief that she was sexually harassed by Owens is properly alleged in the Complaint. Defendant argues that Plaintiff's belief remains objectively unreasonable.

However, the objective reasonableness of this belief may be a fact-intensive question that is better left to summary judgment. *See, e.g., Byers*, 209 F.3d at 428

12

(holding, on a review of summary judgment evidence, that a plaintiff employee's belief of racial discrimination was objectively unreasonable). "The objective reasonableness of a belief is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee." *Allen v. Admin. Review Bd.*, 514 F.3d 468, 477 (5th Cir. 2008) (citation omitted); *see also id.* (holding that, where "'reasonable minds could disagree on the issue,' the objective reasonableness of an employee's belief should not be decided as a matter of law") (citing *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1188 (11th Cir. 2001)). Under this factual standard the Court cannot say at the early Rule 12(b)(6) stage of this litigation that Plaintiff unreasonably believed that she was sexually harassed in violation of Title VII. *See Morales v. Motion Indus., Inc.*, No. 3:09CV2070-N, 2010 WL 11618060, at *4 (N.D. Tex. July 8, 2010) ("Motion argues that no reasonable person could believe that the conduct Morales complained of violated Title VII and, therefore Morales did not engage in a protected activity. This argument is better suited for a motion for summary judgment."). Defendant's motion as to the retaliation claims is thus denied.

### III. Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleading once without seeking leave of court or the consent of the adverse party at any time before a responsive pleading is served. After a responsive pleading is served, "a party may amend only with the opposing party's written

13

consent or the court's leave." *Id.* Rule 15(a) instructs the Court to "freely give leave when justice so requires." *Id.* "The decision to grant or deny a motion to amend pleadings is entrusted to the sound discretion of the district court." *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). The Rule "evinces a bias in favor of granting leave to amend," but it "should not be given automatically." *Chitimacha Tribe*, 690 F.2d at 1163. Here, the Court finds that the pleading deficiencies identified by this Memorandum Opinion are correctable and that Plaintiff should be allowed to amend her Complaint.[2] The Court will therefore exercise its discretion and allow Plaintiff to file an Amended Complaint within fourteen (14) days of this Order.

The Complaint alleges numerous claims and causes of action, including claims of gender, age, ethnicity discrimination and violations of the Fair Labor Standards Act. In the event that Plaintiff intends to file an amended complaint, she should state with clarity and specificity those facts which support a cause of action.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [7] Motion for Partial Dismissal of Plaintiff's Claims filed by Defendant, Mandal's, Inc., is

---

[2] In determining whether to grant leave to amend under Rule 15(a), "the court may consider factors such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment.'" *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013) (alteration in original) (citations omitted). The Court finds that these factors warrant an opportunity for Plaintiff to amend her Complaint.

**GRANTED IN PART AND DENIED IN PART**.  Plaintiff's sexual harassment claims are hereby **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiff is **GRANTED** leave to file an Amended Complaint within fourteen (14) days of the date of this Memorandum Opinion and Order.

**SO ORDERED AND ADJUDGED** this the 5th day of July, 2022.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE